*CLEARED FOR PUBLIC FILING*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **IYOB MURSHAD ALI SALEH,** also listed as Ayoub Murshid Ali Saleh, **MURSHAD ALI SALEH,** as Next Friend of Mr. Saleh, *Petitioners/Plaintiffs*, v. **GEORGE W. BUSH**, *et al.*, *Respondents.* | CIVIL ACTION NO. 06-CV-01765 (HHK) |

**OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

Petitioner Saleh opposes Respondents' Motion to Dismiss filed on April 19, 2007.[1] As explained in Petitioner's Motion to Stay Habeas Action and Hold Habeas Action in Abeyance

---

[1] Counsel for Petitioner became aware of Respondent's Motion to Dismiss this matter only after seeing it referenced in Respondent's Opposition to Petitioner's Motion to Stay and Abey, filed June 8, 2007. The Motion to Dismiss was served via ECF with a subject line naming a detainee not represented by Counsel for Petitioner, "*et al*." Because the email's subject did not mention Petitioner's name or docket number, Counsel did not recognize that the Government's combined Motion to Dismiss included Petitioner's case. Counsel for Petitioner take full responsibility for this inadvertent oversight. Upon learning of the Government's Motion, counsel immediately prepared this Opposition.

This Court's Rule LCvR 7(b) allows a memorandum of points and authorities in opposition to a motion to be filed "[w]ithin 11 days of the date of service or at such other time as the Court may direct." Counsel respectfully submit this Opposition for the Court's consideration. The Government has not been prejudiced by the delay in this response, because it has had a full opportunity to brief its position on the motion to dismiss, and has also already received and responded to Petitioner's Motion to Stay Habeas Action and Hold Habeas Action in Abeyance; the Government's response to Petitioner's argument merely referenced its Motion to Dismiss. Thus, the Government is fully aware of Petitioner's position on dismissal versus staying and abeying this action, and has had every opportunity to set forth its own position.

Pending Exhaustion of Remedies and Supreme Court Consideration of Jurisdiction, filed on June 7, 2007, controlling Circuit and Supreme Court authority and the interests of justice and judicial economy support not dismissing Petitioner's habeas action, but staying it and holding it in abeyance pending Petitioner's exhaustion of remedies under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat 2680 (2005) ("DTA"), and pending subsequent Supreme Court consideration of relevant issues.

Respondents' Motion misinterprets the Court of Appeals' split decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) ("*Boumediene I*"), and the split commentary from the Supreme Court Justices on the denial of certiorari in that case, 127 S. Ct. 1478 (2007) ("*Boumediene II*"). Indeed, the case upon which the Government's Motion principally relies establishes that this Court has subject matter jurisdiction: a case may be dismissed for lack of subject-matter jurisdiction only when the federal claim is frivolous or foreclosed by prior Supreme Court decisions. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). Petitioner's habeas action raises substantial issues which have not yet been addressed, as the split *Boumediene* opinion in the Circuit Court and the Supreme Court's split commentary in denying certiorari pending exhaustion of remedies under the DTA make clear. 476 F. 3d 981 (D.C. Cir.), *cert. denied*, 127 S. Ct. 1478 (2007).

Therefore, not only does this court have authority to enter a stay-and-abey order to safeguard habeas rights during the period of exhaustion, such an order should issue in the absence of frivolous claims and intentional delay. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). And while the merits of the habeas action are stayed pending exhaustion and post-exhaustion review, this Court has the authority to maintain the protective order and other supervisory orders entered in this case. *United States v. United Mine Workers of Am., Inc.*, 330 U.S. 258, 290-91

(1947); *In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964). Respondents' Motion to Dismiss should be denied.

In sum, Respondents' position is untenable for five reasons: (1) respondents' authority supporting lack of subject matter jurisdiction is limited to frivolous jurisdictional claims, not the profound constitutional issues raised by statutes purporting to deny an easily identifiable group of Muslim foreigners access to the courts; (2) *Boumediene II*, 127 S. Ct. 1478, is neither final nor dispositive in light of Justices Stevens and Kennedy's pronouncement that DTA remedies must be exhausted before the Court will grant certiorari; (3) the Supreme Court authorizes district courts to stay pending habeas corpus proceedings and hold them in abeyance pending exhaustion of alternative remedies, *see Rhines*, 544 U.S. 269; (4) while the Supreme Court rules on the jurisdictional questions, the lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition," *United Mine Workers*, 330 U.S. at 290-91; and (5) Petitioner Saleh is not bound by the record established to date in *Boumediene*.

I.  **Respondents' Key Authority Establishes That This Court Retains Jurisdiction Over Habeas Actions As Long As Petitioner's Claims Are Not Frivolous And Have Not Been Decided On The Merits By The Supreme Court.**

Respondents rely principally on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question. (Motion to Dismiss at 4.) But respondents ignore the preceding language in *Steel Co.* that reinforces this Court's jurisdiction to maintain Petitioner Saleh's habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that the District Court has subject matter jurisdiction as long as there is a non-frivolous argument supporting Petitioner's claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,'...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

*Id.* at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  Petitioner's claims are not frivolous.  Courts have divided on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene I* opinion, which in turn prompted the three-way Supreme Court fracture in the *Boumediene II* denial of certiorari.  The dissenting *Boumediene* opinions demonstrate that a plausible reading of the Constitution and laws of the United States would support Petitioner Saleh's habeas corpus petition.  *See Boumediene I,* 476 F.3d at 994-1012 (Rogers, J., dissenting); *Boumediene II,* 127 S. Ct. at 1479-81 (Breyer, Souter, & Ginsberg, JJ., dissenting from denial of certiorari).

*Steel Co.* further establishes that only an adverse Supreme Court ruling on the merits, and not a Circuit Court opinion such as *Boumediene I*, is sufficient to deprive this Court of subject matter jurisdiction: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy."  523 U.S. at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)) (emphasis added).  The *Boumediene* denial of certiorari indisputably is not a ruling on the merits.

Respondents' own Motion concedes the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed.  In footnote 15, Respondents note that the protective order should survive dismissal, citing to key authority supporting Petitioner Saleh's position: *United States v. United Mine Workers*, 330 U.S. 258 (1947) (Motion at 8-9 n.15). As argued below, *United Mine Workers* establishes that the District Court has the authority throughout the

4

litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised." *See Boumediene II*, 127 S. Ct at 1479 (quoting *Padilla*, 126 S. Ct. at 1650 (Kennedy, J., concurring in the denial of certiorari)).

Thus Respondents' key authority purportedly supporting dismissal instead establishes that the Motion to Dismiss should be denied while Petitioner exhausts alternative remedies. Instead, this Court should follow *Rhines'* stay-and-abey procedure. If Petitioner Saleh's habeas case is not mooted by the DTA proceedings, this Court must then be available to address the adequacy of the alternative remedies he will then have exhausted.

**II.    Dismissal Is Not Appropriate Because *Boumediene* Establishes That Petitioner's Habeas Action Raises Substantial Issues That Have Not Been Decided By The Supreme Court, And Will Not Be Addressed Until Alternative Remedies Are Exhausted.**

Respondents attempt to unduly stretch the Circuit Court's *Boumediene I* decision and the Supreme Court's denial of certiorari. Notwithstanding pre-existing jurisdiction under *Rasul v. Bush*, 542 U.S. 466 (2004), a split panel of the D.C. Circuit Court of Appeals found that post-*Rasul* statutes deprived courts of jurisdiction over foreign nationals detained at Guantánamo. *Boumediene I*, 476 F.3d 981. Because the *Boumediene* petitioners had declined to seek review under § 1005(e) of the DTA, the court's "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction.[2]  *Id.* at 994.

On April 2, 2007, a split Supreme Court denied the *Boumediene* petitioners' application for a writ of certiorari. *See Boumediene II*, 127 S. Ct. 1478. Three justices dissented from the

---

[2] However, the Circuit Court of Appeals has not issued a mandate to return jurisdiction to the District Court.

denial, while Justices Kennedy and Stevens stated that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." *Id.* The latter Justices emphasized that the status quo should be maintained during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 126 S. Ct. 1649, 1650 (2006) (Kennedy, J., concurring in the denial of certiorari)). Based on these opinions, Respondents now seek to finally and permanently dismiss all detainee habeas actions and dissolve all standing District Court orders protecting Petitioner, including access to counsel.

Respondents' argument that *Boumediene* authorizes dismissal of Petitioner's habeas action fails for at least three reasons. First, the Circuit Court's reference to the *Boumediene* petitioners' failure to exhaust alternative remedies, coupled with Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk,* 321 U.S. 114 (1944), supports staying and abeying habeas actions while the DTA remedy is exhausted. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene II*, 127 S. Ct. at 1479 (Stevens and Kennedy, JJ.) (citing *Rasul*, 542 U.S. at 480-81). Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of alternative remedies relies on Petitioner's ability to challenge that efficacy in an underlying District Court habeas corpus case in the first instance, and, if necessary, to appeal to the Court of Appeals and the Supreme Court.

6

> **A.**     **The Exhaustion Of Remedies Model Adopted Explicitly By Justices Stevens And Kennedy And Implicitly By The Circuit Court Requires Availability Of The District Court To Consider The Effectiveness Of Alternative Remedies.**

*Boumediene* does not control this case because, unlike the *Boumediene* petitioners, Petitioner Saleh is exhausting his remedies under the DTA.  The *Boumediene* Court of Appeals opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA.  *Boumediene I*, 476 F.3d at 994.  And Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies. *Boumediene II*, 127 S. Ct. at 1478 (citing *Ex parte Hawk*, 321 U.S. 114).

The citation to *Hawk* is telling. Hawk filed for federal habeas corpus relief under circumstances similar to Petitioner Saleh's, in which the effectiveness of alternative remedies (there in the state court) had not been established.  The Supreme Court in *Hawk* not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated. ... But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy... or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate,... a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  Thus the exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in this federal District Court.

7

Claims that the writ of habeas corpus has been suspended or eliminated require courts to determine whether alternative remedies provide coextensive protection. *See Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari made clear that if the DTA remedy is "inadequate," the Supreme Court is prepared to address the merits of detainees' habeas corpus claims. *Boumediene II*, 127 S. Ct. at 1478 (statement of Stevens & Kennedy, JJ.) (citing *Marino v. Ragen*, 332 U.S. 561 (1947)). Further, the Court stated that, in the interim, Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. In contrast, irrevocably dismissing the present case would impede this court's ability to satisfy its duty to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id.* (quoting *Padilla*, 126 S. Ct. at 1650 (Kennedy, J., concurring in the denial of certiorari)).

The exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place to address the adequacy of the DTA remedy Petitioner currently is pursuing. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

> **B.     The Supreme Court Has Not Decided The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.**

Respondents' claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1478. As the three dissenting Justices, as well as dissenting Circuit Court Judge Rogers, noted, the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. Justices Stevens and

8

Kennedy's statements only reinforce the need to fully consider the unique facts and legal arguments of each of Petitioner's habeas claims, after exhaustion of alternative remedies. Thus the *Boumediene* case does not resolve the jurisdictional questions in Petitioner Saleh's case.[3]

**III.     Because Petitioner Saleh Is Exhausting Available Remedies, This Court Should Enter A Stay-And-Abey Order As Outlined by The Supreme Court In *Rhines*.**

As elaborated in Petitioner's Motion to Stay and Abey, given Petitioner Saleh's duty to exhaust remedies under the DTA, the proceedings in this action should be stayed and held in abeyance pending completion of his DTA case before the Court of Appeals. In *Rhines*, the Supreme Court explicitly approved the stay-and-abey procedure in the context of federal habeas corpus proceedings. 544 U.S. at 278. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

**IV.     Under *United Mine Workers*, This Court Has Authority To Preserve Its Standing Orders While Jurisdictional Questions Are Litigated, And It Must To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

Respondents' attempt to dissolve this Court's standing orders concerning, *inter alia*, access to counsel, aim to prejudice Petitioner Saleh in the face of the Supreme Court's contrary admonition. In the statement accompanying the *BoumedieneII* order denying certiorari, Justices Stevens and Kennedy stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Boumediene II,* 127 S. Ct. at 1478 (internal citations omitted).

---

[3] The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

The Justices' language echoes the long-established principle that the ultimate question of jurisdiction is for the Supreme Court, and while such a question is under consideration, the courts have "authority from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Circuit Court of the District of Columbia has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." *Shipp*, 203 U.S. at 573. Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief." *United Mine Workers*, 330 U.S. at 293.

*Georgetown College*, 331 F.2d at 1005. This Court should protect the status quo by maintaining the orders entered to date to assure Petitioner Saleh is not prejudiced in his ability to litigate his DTA action, to preserve potential remedies before this Court, and to protect his safety and life.

The dismissal of the District Court proceedings, with its accompanying standing orders, would constitute exactly the type of prejudice to Petitioner's ability to litigate that Justices Kennedy and Stevens instructed the courts to guard against. This Court properly addressed issues preliminary to ultimate disposition throughout this litigation. Its orders should remain intact pending exhaustion of DTA remedies. Respondents' desire to renegotiate the protective orders is not a reason to dismiss this action rather than following the Supreme Court's approved stay-and-abey procedure.

Contrary to the Government's contention, dismissal of this case would not automatically dissolve the protective and injunctive orders entered by the Court. As the Court recognized in *Adem v. Bush*, 425 F. Supp. 2d 7, 19-20 (D.D.C. 2006), the "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo

Bay, Cuba,"[4] first entered in 2004, like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780-82 (1st Cir. 1988); *Marshall v. Planz*, 347 F. Supp. 2d 1198, 1201 (M.D. Ala. 2004); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000).  This Court expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the Amended Protective] Order."  *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d at 176.

Although the Government is aware of at least some of these precedents, it mistakenly interprets them to mean that only "certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and 'protected' information appropriately, retain vitality beyond the required dismissal of these cases." (Motion at 8-9 n.15.) In other words, the Government contends that only those portions of the Court's protective and injunctive orders that it likes, because they constrain the detainees' counsel, survive dismissal, but those portions it does not like, because they constrain the Government, do not. The Government cites no authority, and Petitioner is aware of none, that supports such cherry-picking by the Government. *Cf. SRS Techs., Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in effect after settlement of underlying lawsuit, plaintiff "should now be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents"). The cases cited above show that the protective and injunctive

---

[4] *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004).

11

orders entered by the Court survive dismissal in their entirety, unless and until they are modified or dissolved by separate order of the Court.

Moreover, equitable principles dictate that the Court may not dissolve the protective and injunctive orders entered in this case without first holding an evidentiary hearing at which the Government and Petitioner are heard. *See Hodge v. Dep't of Housing and Urban Dev.,* 862 F.2d 859, 861 (11th Cir. 1989). The Government would bear the burden of why the orders, or portions of them, should be dissolved. *See SRS Techs.*, 216 F.R.D. at 529-31; *Lee Shuknecht & Sons, Inc. v. P. Vigneri & Sons, Inc.*, 927 F. Supp. 610, 614-616 (W.D.N.Y. 1996); *Grundberg v. Upjohn Co.*, 140 F.R.D. 459 (D. Utah 1991); *SEC v. Samuel H. Sloan & Co.*, Nos. 71 Civ. 2695 (RJW), 74 Civ. 5729 (RJW), 1991 WL 173730 (S.D.N.Y. Aug. 29, 1991). This is so even where, as here, intervening legislation has affected the Court's jurisdiction. *See Miller v. French*, 530 U.S. 327, 345-348 (2000). The Government has not moved to dissolve the protective and injunctive orders entered in this case, and the Court has not held an evidentiary hearing on this issue. Therefore, to the extent the Government seeks by its motion to dismiss to dissolve the protective and injunctive orders, the motion should be denied as premature.

V.  ***Boumediene* Does Not Establish The Record To Which Petitioner Should Be Bound While He Exhausts Available Remedies, And Other Legal Theories May Be Available On The Facts Of His Case.**

Respondents' request for dismissal of these cases fails to recognize the unique factual settings and resulting legal issues faced by Petitioner.  The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues Petitioner may raise in this action.  *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases

12

where constitutional issue was not raised or resolved). The most basic distinction from *Boumediene* is that the scope and efficacy of the DTA remedy will be tested and will provide this Court necessary information that will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene II* statement accompanying the denial of certiorari.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, should involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA must be determined in light of the post-DTA litigation about to ensue and address Petitioner Saleh's unique claims, including challenges under the bill of attainder, equal protection, due process, habeas corpus, and ex post facto clauses of the Constitution.

## CONCLUSION

Petitioner Saleh's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits as to the effect of the DTA and MCA, and Petitioner has not had his individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while his case is litigated: under *United Mine Workers*, 330 U.S. at 291, the Court has "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition," and under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay this action and hold it in abeyance for a reasonable time for the DTA action to be litigated.

For the foregoing reasons, this Court should deny Respondents' motion to dismiss, pending Petitioner's exhaustion of his DTA remedies in the Court of Appeals, and hold this action in abeyance pending Petitioner's exhaustion of those remedies and resolution by the Supreme Court of the jurisdictional issue of whether the MCA constitutionally stripped Guantanamo prisoners of their habeas rights, or resolution by the Supreme Court of a petition seeking review of *Boumediene*.

Respectfully submitted,

 /s/ Brent Rushforth
Kit A. Pierson
Brent N. Rushforth
Sarah B. Pojanowski
Jenny L. Workman
Elizabeth Arora
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
Fax: (202) 912-2020

Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
66 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **IYOB MURSHAD ALI SALEH,** <br> also listed as Ayoub Murshid Ali Saleh, <br><br> **MURSHAD ALI SALEH,** <br>      as Next Friend of Mr. Saleh, <br><br> *Petitioners/Plaintiffs*, <br><br>           *v.* <br><br> **GEORGE W. BUSH**, *et al.*, <br><br> *Respondents.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **CIVIL ACTION NO. 06-CV-01765 (HHK)** <br> ) <br> ) <br> ) <br> ) <br> ) |

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the **OPPOSITION TO RESPONDENTS' MOTION TO DISMISS** to be served by filing with the Court Security Officer, with notice of filing on the ECF system provided to:

TERRY M. HENRY
ANDREW WARDEN
JUDRY SUBAR
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470
Attorneys for Respondents

Dated: June 14, 2007                                                   ____/s/ Elizabeth S. Arora____

15